UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| KARL HANSEN, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 3-19-cv-00413-LRH-WGC |
| | ) |
| ELON MUSK; TESLA, INC.; TESLA MOTORS, INC.; U.S. SECURITY ASSOCIATES; *et al.* | ) |
| | ) |
| *Defendants*. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND STAY JUDICIAL PROCEEDINGS**

Plaintiff Karl Hansen, by and through counsel, submits this opposition to the motion to compel arbitration and to stay judicial proceedings brought by Defendants Tesla, Inc., ("Tesla") Tesla Motors, Inc. ("Tesla Motors") and Elon Musk ("Musk," and collectively, the "Tesla Parties").

## INTRODUCTION

The Tesla Parties filed their motion to compel arbitration and stay judicial proceedings on February 27, 2020, 232 days after the complaint was filed in this matter (ECF 1, filed July 10, 2019), 161 days after filing their Answer (ECF 4, filed September 19, 2019), 79 days after filing the Joint Report of Conference of Parties (ECF 27, filed December 10, 2019), 66 days after exchanging initials disclosures on December 23, 2019 (which included almost a thousand pages of documents produced by Plaintiff), 88 days before the Parties' stipulated discovery cut-off date of May 25, 2020 (ECF 27), eight days after Plaintiff filed a substitution of counsel (ECF 35), seven days after receiving Plaintiff's interrogatories and requests for production from his new

1

counsel, three days after Plaintiff filed a petition for the *pro hac vice* appearance of the undersigned (ECF 37), and on the same day the Court issued an order approving the appearance of the undersigned as counsel for Plaintiff (ECF 38).

The Tesla Parties claim to base their motion on an offer letter attached as Ex. A to their motion and dated February 28, 2018, (ECF 39 & 39-3), meaning that the Tesla parties had this document for 24 months but are only now asking the Court to consider it as a basis to compel arbitration. They also proffer a separation agreement attached as Ex. B that has an inscrutable digital screed that they claim is Plaintiff's signature and that is purportedly dated July 19, 2018, (ECF 39 & 39-4), meaning that the Tesla parties purportedly also have had this document for 19 months.[1] Moreover, the Tesla Parties also base their motion on a "Non-Employment, Non-Disclosure, Invention Assignment and Arbitration Agreement" entered into with Defendant US Security Associates attached as Ex. C, dated July 17, 2018, (ECF 39 & 39-4), which they have also had for 19 months.[2] In light of the forgoing, it is abundantly clear that the Tesla Parties' sudden desire to compel arbitration and to stay the prosecution of Count III, Plaintiff's Sarbanes-Oxley Act ("SOX") whistleblower retaliation claims (which pursuant to 8 U.S.C. § 1514(e)(2) cannot be required to be compelled to arbitration – a fact not referenced by the Tesla Parties),[3] is not based on any purported judicial economy, as claimed, but rather on a strategic decision to change forums in light of the new lawyers representing Plaintiff and their efforts to take

---

[1] While it is undisputed that the Tesla Parties offered the agreement in question to Mr. Hansen, Mr. Hansen denies that he ever signed this document, and on March 2, 2020, counsel for Mr. Hansen asked counsel for the Tesla Parties to produce an original copy of this agreement with original metadata to verify its authenticity and to provide any proof of the payment of consideration by the Tesla Parties. No proof of either was produced in response.

[2] No claim is made that these documents were recently discovered.

[3] SOX mandates that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." 18 U.S.C. § 1514A(e)(2). Hence Plaintiff's SOX claim, Count III, is not subject to arbitration.

2

additional discovery from the Tesla Parties. This attempt to gain strategic and tactical advantages after months of litigation is not a proper basis for filing an eleventh-hour motion to compel arbitration and stay the prosecution of non-arbitrable claims, and hence the motion is due to be denied.

## ARGUMENT

The Federal Arbitration Act ("FAA") provides that written provisions to arbitrate disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). This provision reflects "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" Concepcion, 563 U.S. at 339 (citation omitted) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, at 67 (2010)). "When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Arbitration provisions may be nullified, however, by "generally applicable contract defenses, such as fraud, duress, or unconscionability." Concepcion, 563 U.S. at 339 (quoting 9 U.S.C. § 2).

The Ninth Circuit has explained that arbitration provisions may be nullified by the equitable contract defenses of delay and waiver, and this is an issue for this Court to decide:

> In *Howsam v. Dean Witter Reynolds, Inc.,* the Supreme Court distinguished between two categories of gateway issues on motions to compel arbitration, each of which has a different presumption as to whether a court or an arbitrator should decide. 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *see also Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1120-21 (9th Cir. 2008) (describing the two categories of disputes). The first category of gateway issues is a "question of arbitrability" — that is, "whether the parties have submitted a particular dispute to arbitration." *Howsam,* 537 U.S. at 83, 123 S.Ct. 588. This category includes issues that the parties would have expected a court to

3

> decide such as "whether the parties are bound by a given arbitration clause" or whether "an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 84, 123 S.Ct. 588. These disputes are "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id.* at 83, 123 S.Ct. 588. (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). In contrast, the second category — "procedural" issues — is "presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* at 84, 123 S.Ct. 588. In *Howsam,* for example, the Court held that the question as to whether a party met the arbitral forum's statute of limitations for filing a case was a procedural question that the parties would have expected the arbitrator to decide; accordingly, as the Court made clear, the arbitrator should presumptively decide such disputes. *Id.* at 85, 123 S.Ct. 588.
>
> We have made clear that waiver by litigation conduct is part of the first category of gateway issues. *Cox,* 533 F.3d at 1121. In *Cox,* an employee who had been fired contended that his employer waived its right to arbitrate his discrimination claim because, among other things, it had refused his earlier request to arbitrate. *Id.* at 1118, 1125. Addressing the defendant's argument that the arbitrator should decide the issue, we concluded that the question whether a party waived its right to arbitrate on the basis of its litigation conduct is a question of arbitrability and is in the first category of gateway issues. *Id.* at 1121; *see also id.* Accordingly, under *Howsam,* the question before us is presumptively for a court and not an arbitrator to decide. 537 U.S. at 83, 123 S.Ct. 588.

*Martin v. Yasuda*, 829 F.3d 1118, 1122–23 (9th Cir. 2016).

The *Martin* Court further explained that:

> We have stated, however, that a party's extended silence and delay in moving for arbitration may indicate a "conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims," which would be inconsistent with a right to arbitrate. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772, 777 (D.C. Cir. 1987)). We find this element satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court. *See id.* at 756, 759 (finding waiver when party answered complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the pleadings); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed.Appx. 663, 664 (9th Cir. 2014) (finding this element satisfied when the parties "conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss"); *see also Plows v. Rockwell Collins, Inc.*, 812 F.Supp.2d 1063, 1067–68 (C.D. Cal.

4

> 2011) (finding this element satisfied when the defendant actively litigated the case by removing it to federal court, seeking a venue transfer, participating in meetings and scheduling conferences, negotiating and entering into a protective order, and participating in discovery that would not have been available under the arbitration agreement). A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver. *See In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."); *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009) ("A reservation of rights is not an assertion of rights.").

*Martin*, 829 F.3d at 1125–26.[4]

In *Martin* the defendants failed to move for arbitration for seventeen months and the plaintiffs expended considerable money and effort in federal litigation, including conferring with opposing counsel regarding how to conduct the case on the merits, analyzing how to approach discovery and class certification, and contesting the defendants' motion to dismiss on the merits. *Martin*, 829 F.3d at 1127–28. "As discussed above, even if the parties exchanged the same information in court as they would have in arbitration, the process of doing so in federal court likely cost far more than determining the answer to the same question in arbitration. The unnecessary, additional costs incurred by the plaintiffs as a result of the defendants' dilatory motion to compel constitutes obvious prejudice." *Id.*

---

[4] *See also Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1051 (8th Cir. 2016) (finding prejudice after an eight-month delay); *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949, 951 n.7 (1st Cir. 2014) (finding prejudice with a nine-month delay after the filing of the complaint); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 454–55 (3d Cir. 2011) (holding that a ten-month delay before moving to compel, while not dispositive, weighed in favor of waiver); *In re Mirant*, 613 F.3d at 591 (considering litigation expenses in prejudice inquiry after defendant waited 18 months before moving to compel arbitration); *Van Ness Townhouses*, 862 F.2d at 759; *see also Kelly*, 552 Fed.Appx. at 664 ("A party that is aware that it has a right to compel arbitration of a dispute cannot wait to exercise that right until the parties have expended a significant amount of time and money to litigate that dispute in federal court."); *Plows*, 812 F.Supp.2d at 1068 (holding that thirteen months of legal fees and presumably the different choices that would have been made had plaintiffs known the case was going to arbitration were contributing factors to a finding of prejudice).

As noted *supra*, the Tesla Parties filed their motion to compel arbitration and stay judicial proceedings on February 27, 2020, 232 days after the complaint was filed in this matter (ECF 1, filed July 10, 2019), 161 days after filing their Answer (ECF 4, filed September 19, 2019), 79 days after filing the Joint Report of Conference of Parties (ECF 27, filed December 10, 2019), 66 days after exchanging initial disclosures on December 23, 2019 (which included almost a thousand pages of documents produced by Plaintiff), 88 days before the Parties' stipulated discovery cut-off date of May 25, 2020 (ECF 27), eight days after Plaintiff filed a substitution of counsel (ECF 35), seven days after receiving Plaintiff's interrogatories and requests for production from his new counsel, three days after Plaintiff filed a petition for the *pro hac vice* appearance of the undersigned (ECF 37), and on the same day the Court issued an order approving the appearance of the undersigned as counsel for Plaintiff (ECF 38).

The Tesla Parties' sudden desire to compel arbitration and to stay the prosecution of Plaintiff's SOX whistleblower retaliation claims (which pursuant to 8 U.S.C. § 1514(e)(2) cannot be required to be compelled to arbitration), is a strategic decision to change forums in light of the new lawyers representing Plaintiff in this matter and their efforts to take additional discovery from the Tesla Parties. This will result in the litigation starting anew as opposed to concluding in less than three months and will cause profound delay and additional expenses rather than being an "efficient, effective, and less expensive means of resolving disputes." Moreover, Count I is a claim for intentional interference with contractual relations against the Tesla Parties based on Plaintiff's subsequent employment with Defendant US Security Associates, Inc. There is no efficiency at all in arbitrating this claim separately or first, as it will provide absolutely no insight into how this Court might eventually resolve Count III, the SOX claim, which turns on the Tesla Parties' wrongful termination of Plaintiff from their employment and not from Defendant US

Security Associates, Inc. Hence the Tesla Parties' attempt to gain strategic and tactical advantages after months of litigation is not a proper basis for filing an eleventh-hour motion to compel arbitration and stay the prosecution of non-arbitrable SOX retaliation claim, and hence the motion is due to be denied.

Karl Hansen
*By Counsel*


/s/ Nicholas Woodfield
Nicholas Woodfield, Esq.
*Pro Hac Vice*
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
nwoodfield@employmentlawgroup.com
*Counsel for the Plaintiff*

Joshua D. Buck, Esq.
Mark Thierman, Esq.
Leah L. Jones, Esq.
Thierman Buck LLP
7287 Lakeside Drive
Reno, NV 89511
Phone: (775) 284-1500
Fax: (775) 703-5027
josh@thiermanbuck.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of March, 2020, a true and correct copy of the foregoing was served via ECF upon the following:

Crane M. Pomerantz
Sklar Williams, PLLC
410 South Rampart Blvd., Suite 350
Las Vegas, Nevada 89145
cpomerantz@sklar-law.com

Christopher F. Robertson
Anne V. Dunne
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210-2028
crobertson@seyfarth.com
adunne@seyfarth.com

*Attorneys for Defendants Elon Musk, Tesla, Inc., and Tesla Motors, Inc.*

Dora V. Lane
Matthew T. Cecil
Jordan Walsh
Holland & Hart LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
dlane@hollandhart.com
mtcecil@hollandhart.com
sjwalsh@hollandhart.com

Jeremy T. Naftel
Janine M. Braxton
Alex A. Smith
Martenson, Hasbrouck & Simon LLP
455 Capitol Mall, Suite 601
Sacramento, CA 95814
jnaftel@martensonlaw.com
jbraxton@martensonlaw.com
alexsmith@martensonlaw.com

*Attorneys for Defendant*
*U.S. Security Associates*

/s/ Nicholas Woodfield
Nicholas Woodfield, Esq.