UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KARL HANSEN,<br><br>Plaintiffs,<br><br>v.<br><br>ELON MUSK; TESLA, INC.; TESLA MOTORS, INC.; U.S. SECURITY ASSOCIATES; DOES 1 THROUGH 50,<br><br>Defendants. | Case No. 3:19-cv-00413-LRH-WGC<br><br>ORDER |

Defendants, Elon Musk ("Musk"), Tesla, Inc. ("Tesla"), Tesla Motors, Inc. ("Tesla Motors") (collectively the "Tesla Parties"), U.S. Security Associates, Inc. ("USSA"), and Does 1 through 50 (collectively "defendants"), move this court to compel arbitration, dismiss plaintiff's complaint, and stay the case pending arbitration. ECF Nos. 39, 44. Plaintiff, Karl Hansen, opposed both motions. ECF Nos. 40, 45. Because the plaintiff's claims for both Count I, intentional interference with business relations, and Count II, breach of contract, fall within the scope of the arbitration agreement and because the arbitration agreement is valid and has not been waived, the court grants the defendants' motions to compel arbitration. The court grants the defendants' motions to stay proceedings on Count III, violations of the Sarbanes Oxley Act ("SOX"), because the claim arises out of the same conduct as Counts I and II and staying this claim pending the conclusion of arbitration is in the best interest of judicial economy.

*///*

*///*

## I. BACKGROUND

Tesla is a publicly traded corporation that operates its Gigafactory in Sparks, Nevada. ECF No. 1 ¶¶ 7-8. Musk is Tesla's Corporate Executive Officer. *Id.* ¶ 10. Hansen was hired by Tesla in March of 2018 as a Protection Associate investigating criminal activity at Tesla's Gigafactory. ECF No. 1 ¶¶ 12-14; ECF No. 4 ¶ 7. The Tesla Parties allege that Hansen signed an offer letter pertaining to his employment with Tesla in February 2018, which contained the following arbitration provision:

> [A]ny and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by **final, binding and confidential arbitration** . . ..

ECF No. 39-3 at 3-4 (emphasis in original).

Throughout Hansen's time employed at Tesla, he was assigned to a variety of investigations, including alleged thefts at the Gigafactory and activities within the Gigafactory related to Mexican Drug Cartel members. ECF No. 1 ¶ 16. On or about June 19, 2018, Hansen was informed that his position with Tesla at the Gigafactory was being eliminated due to restructuring. *Id.* ¶ 23. Hansen was informed that an investigator position had been arranged for him with USSA, a third-party, which had contracted with Tesla. *Id.* ¶¶ 24, 46

As part of Hansen's agreement with USSA, he was assigned to work at Tesla's Gigafactory. ECF No. 1 ¶ 24. Hansen alleges that on June 21, 2018, he completed the required online application to work for USSA. *Id.* ¶ 34. Hansen alleges that then, on June 28, 2018, he was informed by Tesla that his position with USSA was revoked. *Id.* ¶ 35. Hansen further alleges that following this conversation on June 28, 2018, he continued to work for USSA, but in a new capacity; in an hourly position at the Gigafactory's west gate entrance. *Id.* ¶¶ 36, 39. As part of his reallocation from Tesla to USSA, Hansen signed a Non-Employment, Non-Disclosure, Invention Assignment, and Arbitration Agreement on July 17, 2018, which stated:

///

///

///

> As a condition of my assignment to Tesla, Inc., its subsidiaries, successor assigns (together **"Tesla"** or **"the Company"**), who is being provided services by my employer, U.S. Security (**"Supplier"**),[1] I agree to the following provisions of this Non-Employment, Non-Disclosure, Invention Assignment and Arbitration Agreement.
>
> . . .
>
> [Y]ou, Tesla and Supplier agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your assignment, or the end of your assignment at Tesla, will be resolved, to the fullest extent permitted by law by final, binding, and confidential arbitration in your city and state of employment conducted by a mutually agreed upon arbitrator.

ECF No. 39-5 at 2, 4. Additionally, the agreement states, "Tesla, Supplier and their Affiliates are intended third-party beneficiaries of this Agreement." *Id.* at 5. The Tesla Parties allege that on July 19, 2018, Hansen signed a Severance Agreement, which also included an arbitration provision, in which Hansen agreed to "waive [his] right to have any dispute concerning this agreement resolved in a court of law by a judge or jury." ECF No. 39 at 4; ECF No. 39-4 at 8. Hansen disputes that he signed this document and the authenticity of it. ECF No. 40 at 2.

Hansen alleges that during his time at Tesla he also discovered that Tesla's senior management was awarding improper contracts at the Gigafactory that were "defrauding" Tesla. ECF No. 1 ¶ 17. Hansen alleges that on or about August 9, 2018, he submitted information to the Securities and Exchange Commission ("SEC") regarding this misconduct at Tesla. *Id.* ¶ 40. Hansen alleges this caused him to be targeted by Musk, resulting in Tesla pressuring USSA to breach their contract with him. ECF No. 1 ¶¶ 17, 39. Hansen alleges that after Musk and Tesla learned of his whistleblower complaint, Musk and Tesla arranged for him to be removed from working at the Gigafactory. *Id.* ¶¶ 41-43. He was terminated from USSA on September 4, 2018. *Id.* ¶ 44.

Hansen filed his complaint against all defendants on July 19, 2019. ECF No. 1. Hansen alleges three causes of action in his complaint: (1) intentional interference with contractual relations (against Tesla, Musk, and Does 1–50, inclusive); (2) breach of contract (against USSA, and Does 1–50, inclusive); and (3) Whistleblower – SOX (against all defendants). Tesla was served with the complaint on August 8, 2019. ECF No. 6 (Musk waived his service of summons

---

[1] "Supplier" refers to USSA.

3

on August 26, 2019 (ECF No. 7)). The Tesla Parties filed their answer on September 19, 2019. ECF No. 4. USSA was served on October 1, 2019 (ECF No. 11), and filed its answer to the complaint on November 11, 2019 (ECF No. 19).

Hansen and USSA have both changed counsel prior to these motions. *See* ECF Nos. 29, 30, 31, 35, 36, 37, 38. Following Hansen's counsel changes, the Tesla Parties filed their motion to compel arbitration and stay judicial proceedings on February 27, 2020. ECF No. 39. Hansen responded on March 10, 2020 (ECF No. 40), and the Tesla Parties replied on March 17, 2020 (ECF No. 41). USSA filed its motion to compel arbitration, dismiss, and stay proceedings on March 27, 2020 (ECF No. 44), to which Hansen responded on April 7, 2020 (ECF No. 45). USSA accordingly replied on April 14, 2020. ECF No. 47.

**II.    DISCUSSION**

> **A. The court grants the Tesla Parties' and USSA's Motion to Compel Arbitration because a binding arbitration agreement covers Counts I & II of Hansen's complaint.**

The Ninth Circuit has determined that "the federal law of arbitrability under the Federal Arbitration Act ('FFA') governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Because the FAA mandates that "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]" a court's involvement is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal quotation marks omitted) (emphasis in original). "Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate." *Cox*, 533 F.3d at 1119. The FAA states that written agreements to arbitrate arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court is satisfied that the making of the arbitration agreement is not at issue, then the court must order arbitration. *Howard Elec. & Mech. Co. v. Frank Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985) (courts "can only determine whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms." (internal quotation marks

and citation omitted)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000).

The Tesla parties have provided three exhibits that include arbitration clauses. ECF Nos. 39-3, 39-4, 39-5. The first is an offer letter from Tesla which was purportedly signed by Hansen on February 28, 2018. ECF No. 39-3 at 9 (Exhibit A – Offer Letter). The second is a severance agreement between Hansen and Tesla, to which Hansen questions the validity of his signature. ECF No. 39-4 at 7-9 (Exhibit B – Severance Agreement); ECF No. 40 at 2. And the third is the Non-Employment, Non-Disclosure, Invention Assignment, and Arbitration Agreement (hereinafter, "the arbitration agreement") between Hansen and Tesla, to which USSA is a third-party beneficiary, signed by Hansen on July 17, 2018. ECF No. 39-5 at 5. Neither Hansen, nor the defendants have questioned the validity of this arbitration agreement and the court finds nothing in the record supports a finding that this arbitration agreement is invalid.

Musk is a nonsignatory in this arbitration agreement. *See* ECF No. 39-5. "'[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles[,]' including equitable estoppel." *Dylag v. W. Las Vegas Surgery Ctr., LLC*, 719 Fed. Appx. 568, 570 (9th Cir. 2017) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)) (unpublished). "Nevada recognizes the doctrine of equitable estoppel in the context of determining when a nonsignatory to an arbitration agreement may compel or be compelled to arbitrate." *Dropp v. Diamond Resorts Int'l, Inc.*, Case No. 2:18-cv-00247-APG-GWF, 2019 WL 332399, at *5 (D. Nev. Jan. 25, 2019). There are two circumstances in which equitable estoppel may apply. *Id.* "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Id.* (quoting *Hard Rock Hotel, Inc. v. Eighth Jud. Dist. Ct. of State in & for Cty. of Clark*, 390 P.3d 166, 2017 WL 881877, at *2 (Nev. 2017) (unpublished) (internal quotation marks omitted)). "Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the

5

signatories to the contract." *Id.* (quoting *Hard Rock Hotel, Inc.*, 2017 WL 881877, at *2 (internal quotations omitted)). Here, the first doctrine does not apply because Hansen is not relying on the written agreement he has with Tesla. However, the second doctrine does apply. In *Dropp*, the court found that the plaintiffs' allegations against the nonsignatory defendants were "substantially interdependent and concerted" because they were able to influence and exercise some level of control over the signatory defendants. *Id.* at *5. Hansen alleges that, "Musk, by and through his corporation TESLA, pressured USSA to breach their contract with Plaintiff." ECF No. 1 ¶ 53. Hansen further alleges that Musk, "pressured [U]SSA, via Defendant TESLA, to eliminate Plaintiff's newly assigned position." *Id.* ¶ 58. Because Hansen alleged that Musk used his influence to exercise control, the allegations are "substantially interdependent and concerted misconduct" between Tesla, the signatory, and Musk, the nonsignatory. Therefore, the arbitration agreement applies equally to Musk. *See Dropp*, 2019 WL 332399, at * 5.

Second, the court finds that both Count I and Count II of Hansen's complaint are encompassed by the arbitration agreement. The Tesla Parties argue that Count I, intentional interference with contractual relations, falls within the arbitration agreement signed by Hansen. ECF No. 39 at 8. The Supreme Court articulates that:

> [T]here is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'

*AT&T Tech., Inc. v. Communications Works of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 564, 582–83 (1960)). Here, the arbitration clause is broad:

> To ensure rapid economical resolutions of disputes that may arise in connection with your assignment at Tesla, you [Hansen], Tesla, and Supplier [USSA] agree that any and all disputes, claims, or causes of action, in law or equity arising from or relating to your assignment, or the end of your assignment at Tesla, will be resolved to the fullest extent permitted by law by final, binding and confidential arbitration.

ECF No. 39-5 at 4. Additionally, when an arbitration clause is broadly drafted, only an express provision excluding a specific dispute or "the most forceful evidence of a purpose to exclude the

6

claim from arbitration" will remove the dispute from consideration by the arbitrator. *AT&T Tech.*, 475 U.S. at 650. No such explicit provision excludes Count I from the arbitration agreement; accordingly, there can be little doubt that this claim falls under the arbitration agreement. *See e.g., Marayonk v. Country Mut. Ins. Co.*, Case No. 2:12-cv-00017-KJD-PAL, 2012 WL 1898877, at *3 (D. Nev. May 23, 2012) (granting a motion to compel arbitration of plaintiff's claims of breach of contract for nonpayment, intentional interference with prospective economic advantages, and intentional interference with contractual relations).

Hansen does not dispute that Count II, breach of contract, also falls within the scope of the arbitration agreement. Because Hansen "bears the burden of establishing that Congress intended to preclude arbitration" of the claims, and because the arbitration clause broadly includes "any and all disputes, claims, or causes of action," and does not specifically exclude breach of contract claims, the court agrees that Count II also falls under the arbitration agreement. *See Green Tree*, 531 U.S. at 92; *AT&T Tech.*, 475 U.S. at 650.

Hansen argues that even though a valid arbitration agreement exists, the Tesla Parties and USSA waived their right to arbitration. ECF No. 40 at 6; ECF No. 45 at 6. "The right to arbitration, like any other contract right, can be waived." *United States v. Park Place Assocs. Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). "A determination of whether 'the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.'" *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (internal quotation marks and citation omitted). The party seeking to prove waiver must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (internal quotation marks and citation omitted).

The Tesla Parties argue that they have not waived their right to arbitration because they made Hansen aware that they wanted to arbitrate in January 2020, which was only three months after all parties had been served. ECF No. 41 at 3-4. The Tesla Parties argue that the

communication about arbitration in the beginning of January shows that all parties knew arbitration was a possibility. *Id.* at 3; *see also* ECF No. 41-1. The Tesla Parties further argue that they have not acted inconsistent with their rights when they chose to compel arbitration only after the parties could not come to an agreement on the terms of arbitration. *Id.* at 2-3. Additionally, the Tesla Parties argue that there has been no prejudice to Hansen because there has not been extensive litigation or discovery before their motion to compel arbitration. *Id.* at 5. USSA argues that it has not waived its right to arbitration because USSA only became aware of the arbitration agreement between Hansen and the Tesla Parties on or around December 11, 2019. ECF No. 44 at 11-12. USSA also argues that they have not acted inconsistently with their rights because they have not litigated any matter, outside of this motion, and because they were unaware of the arbitration agreement until after they filed their answer to the complaint. *Id.* USSA also argues that Hansen cannot show any prejudice because Hansen cannot show more than "self-inflicted" wounds by coming to federal court instead of going to arbitration. *Id.*

First, the court finds that all parties have been aware of defendants' right to compel arbitration since December 17, 2019, at the earliest. ECF No. 47 at 3. Both the Tesla Parties and Hansen knew of the arbitration agreement when it was signed by Hansen on July 7, 2018. ECF No. 39-5 at 5. *See Hoffman v. Constr. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) ("It cannot be said that [the defendant] lacked knowledge of the right to compel arbitration. The contract itself called for arbitration of disputes. . .."); *Mitchell v. CoreLogic, Inc.*, Case No. SA CV 17-2274-DOC (DFMx), 2019 WL 6481306, at *5 (C.D. Cal. April 9, 2019) ("Knowledge of a contractual right to arbitrate is imputed to the contract's drafter." (internal quotation marks and citation omitted)). USSA became aware that the arbitration agreement between Hansen and Tesla applied to them (as opposed to just Tesla) on December 17, 2019. ECF No. 47 at 3. Therefore, by January of 2020, all parties knew of the arbitration agreement. ECF No. 41-1; *see also* ECF No. 47 at 3.

Second, nothing in the record shows that the parties acted inconsistent with their existing rights. "There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate[,]" however, "a party's extended silence and delay in moving

8

for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." *Martin*, 829 F.3d at 1125 (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). "[A] party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth, by & through Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019); *see also Martin*, 829 F.3d at 1125 (a party can waive its right to arbitration when it "chooses to delay [its] right to compel arbitration by actively litigating [its] case to take advantage of being in federal court."). For example, in *Martin*, the Court denied the defendant's motion to compel arbitration after seventeen months of litigation. *Martin*, 829 F.3d at 1126. During that time, defendants filed and lost on a motion to dismiss on a key merits issue, entered into a protective order, answered discovery, and prepared for and conducted a deposition. *Id.* The Court found that "the totality of these actions satisfie[d] this element." *Id.* Alternatively, the court in *Okada v. Nevada Property 1, LLC* found that the defendant, who knew of the arbitration agreement when the complaint was filed, did not waive its right to arbitration even after it motioned to compel arbitration seven months after the complaint was filed and after filing motions to dismiss and to transfer venue. *Okada v. Nevada Property 1, LLC*, Case No. 2:14-cv-01601-LDG-NJK, 2015 WL 5458799, at *1 (D. Nev. Sep. 17, 2015). There, the court held that the defendant had not waived its right to compel arbitration because asking the court to determine whether claims were properly plead was not inconsistent with the right to compel arbitration. *Id.*

Here, the Tesla Parties moved to compel arbitration seven months after the complaint was filed. ECF No. 39. USSA moved to compel arbitration nine months after the complaint was filed. ECF No. 44. Additionally, unlike the defendant in *Martin*, the Tesla Parties and USSA have not sought a determination on the merits or engaged in any motion practice, other than on the pending motions. Furthermore, the parties were in communication about arbitration less than two months after the last defendant, USSA, filed its answer; only filing the pending motions after negotiations

///

fell through. *See* ECF No. 41 at 5; ECF No. 41-1. Therefore, the court finds that the Tesla Parties and USSA have acted consistent with their rights to compel arbitration.

Finally, the court finds that Hansen has not been prejudiced. "To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement." *Martin*, 829 F.3d at 1126 (citing *Fisher*, 791 F.2d at 698). "Such wounds include costs incurred in preparing the complaint, serving notice, or engaging in limited litigation regarding issues directly related to the complaint's filing, such as jurisdiction or venue." *Id.* Courts in this Circuit will "not find prejudice where the party opposing the motion to compel arbitration has expended only litigation and court costs, unless the parties have already conducted significant discovery that would not be available in an arbitration, or if the matter is on the eve of trial." *Moffett v. Recording Radio Film Connection, Inc.*, Case No. CV 19-331 PSG (KSx), 2019 WL 6898955, at *6 (C.D. Cal. Oct. 4, 2019) (quoting *Paxton v. Macy's W. Stores, Inc.*, No. 1:18-cv-00132-LJO-SKO, 2018 WL 4297763, at *12 (E.D. Cal. Sept. 7, 2018)). "[S]ufficient prejudice typically is found only where the petitioning party's conduct has substantially undermined th[e] important public policy [of favoring arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." *Biernacki v. Serv. Corp. Int'l*, 533 Fed. Appx. 741, 742 (9th Cir. 2013) (unpublished) (quotation and citation omitted).

Hansen argues that he has been prejudiced because he incurred costs from litigating in this court before arbitration. ECF No. 40 at 5-6; ECF No. 45 at 5-6. The Tesla Parties argue that the only issue litigated has been this motion, and discovery was not served until after the parties' negotiations about arbitration came to a standstill. ECF No. 41 at 4-5. Additionally, USSA argues that any additional expenses are self-inflicted as a result of Hansen filing the suit in this court instead of going to arbitration. ECF No. 47 at 6-7. USSA further argues that Hansen cannot show prejudice because his Whistleblower (SOX) claim would have required him to file a complaint and engage in the initial disclosures that have occurred. ECF No. 44 at 12. Viewing the facts in the light most favorable to arbitration, the court finds that Hansen is not prejudiced by being compelled to arbitrate Counts I and II of his Complaint. *See Bailey v. Affinitylifestyles.com, Inc.*,

2:16-cv-02684-JAD-VCF, 2017 WL 5895131, at *5-6 (D. Nev. Nov. 29, 2017) (finding that when claims are subject to an arbitration agreement, self-inflicted prejudice relating to filing the complaint and initial litigation is not enough to satisfy the third element of waiver). Here, Hansen chose to ignore his arbitration agreement and file suit in this federal court. He has been in negotiations about arbitrating these claims since January 2020, only a few months after the last defendant was served. ECF No. 41-1. The Tesla Parties and USSA have received no advantage heading into arbitration from the limited litigation of this matter. *See Bailey*, 2017 WL 5895131 at *6 (finding that defendant did not gain any advantage in arbitration when there has not been extensive litigation). Accordingly, the court finds that the Tesla Parties and USSA have not waived their right to arbitration.

Based on the above, the court grants the Tesla Parties' and USSA's motions to compel arbitration. ECF Nos. 39, 44.

### B. The court dismisses both Counts I & II and stays proceedings on Count III until after arbitration.

USSA requests that if the court grants its motion to compel arbitration, the court dismiss Hansen's breach of contract claim "pursuant to [Federal Rule of Civil Procedure] FRCP 12(b)(1) for lack of subject matter jurisdiction and/or FRCP 12(b)(6) for failure to state a claim on which relief can be granted." ECF No. 44 at 13. Additionally, both the Tesla Parties and USSA request that the court stay Hansen's SOX claim, Count III, pending arbitration. ECF No. 39 at 3; ECF No. 44 at 7. Hansen opposes the stay, arguing that it is the defendants' attempt "to gain strategic and tactical advantages after months of litigation[.]" ECF No. 40 at 7; ECF No. 45 at 2.

In *Sparling v. Hoffman Construction Company*, the Ninth Circuit stated:

> This court held that 9 U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause. Thus, the provision did not limit the court's authority to grant a dismissal in the case.

*Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). The Ninth Circuit has also held that district courts may exercise their discretion to dismiss or stay an action that is subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276 (9th Cir. 2006) ("[I]f . . . the district

court decides that the arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration proceedings[.]"). Because Counts I and II are governed by the arbitration agreement, the court exercises its discretion and dismisses both counts.

"As to nonarbitrable claims and issues, however, the district court has discretion whether to stay the litigation pending arbitration." *Winfrey v. Kmart Corp.*, 692 Fed. Appx. 356, 357 (9th Cir. 2017) (unpublished) (citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). Section 3 of the FAA provides:

> [U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Furthermore, courts in this circuit have stayed non-arbitrable claims brought under SOX where, "plaintiff's claims all arise from the same conduct and because allowing the arbitration to resolve will simplify issues of law or questions of fact in future proceedings." *Anderson v. Salesforce.com, Inc.*, Case No. 18-cv-06712-PJH, 2018 WL 6728015, at *3 (N.D. Cal. Dec. 21, 2018).

Hansen claims that while working as an employee for both Tesla and USSA, he reported misconduct to his internal supervisors. ECF No. 1 ¶ 74. Hansen further alleges that he was terminated because he reported this potential misconduct that he uncovered. *Id.* ¶ 75. Count III stems from Hansen's tenure and termination while working for both Tesla and USSA. *See id.* ¶¶ 72–77. Because the court has found a valid arbitration agreement between Hansen and the defendants and "[Hansen]'s claims all arise from the same conduct," the court stays Count III pending arbitration.

### III.   CONCLUSION

IT IS THEREFORE ORDERED that the Tesla Parties' motion to compel arbitration and stay judicial proceedings (ECF No. 39) is **GRANTED.** Count I as to the Tesla Parties is dismissed without prejudice because the parties are compelled to arbitrate.

IT IS FURTHER ORDERED that USSA's motion to compel arbitration, dismiss Count II, and stay judicial proceedings (ECF No. 44) is **GRANTED.**

IT IS FURTHER ORDERED that Count III of Hansen's complaint is **STAYED** pending arbitration. Within 10 days of the issuance of the Arbitration Court's decision, the parties shall file a notice with the court and a motion to lift the stay.

IT IS SO ORDERED.

DATED this 15th day of July, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE