# EXHIBIT 2

TCR to Securities & Exchange Commission

# MEISSNER ASSOCIATES
1430 Broadway, Suite 1802
New York, N.Y. 10018

From:  Stuart David Meissner Esq. 212-764-3100

## SEC Whistleblower Law Firm Meissner Assoc. Represents Second TESLA Ex-Employee Whistleblower – Filed Second SEC Whistleblower Tip

*A former Tesla Employee who was assigned to Tesla Internal Investigations retained the law firm Meissner Associates to file the firm's second formal TCR referral to the SEC against Tesla.  The TCR referral, filed August 9, 2018, alleges that Tesla (1) failed to disclose to shareholders $37 million dollar thefts of raw materials which occurred between January and June of 2018; (2) failed to disclose to shareholders a policy implemented by Tesla at the direction of its CEO Elon Musk pursuant to which Tesla Gigafactory employees' personal cell phones and computers are able to be  monitored and/or hacked by Tesla IT and security personnel; and (3) failed to reveal critical information to law enforcement corroborating allegations of  substantial drug trafficking by Tesla employees at the Nevada Gigafactory, and failed to disclose those allegations or the corroborating evidence to the investing public.*

-------------------------------------------------------------------s--------------------------------------------------------------

NEW YORK (August 16, 2018) –  Karl Hansen, a former member of Tesla's internal security department and its investigations division, is the second former Tesla Inc. employee turned whistleblower to retain **Meissner Associates** to represent him before the Securities & Exchange Commission. Mr. Hansen has requested that the Meissner firm release a summary of his submission to protect the public and encourage other whistleblowers to come forward.

The Meissner firm, which obtained over $22 million dollars from the SEC on behalf of a Monsanto whistleblower in 2016, filed the formal tip with the SEC on behalf of Mr. Hansen on August 9th, 2018. The tip alleges that various material omissions and misstatements were made by Tesla to the investing public in violation of sections 17(a) (2) and (3) of the Securities Act of 1933.  Among the omissions and misstatements asserted, Tesla is alleged to have:

\* failed to disclose  thefts of copper and other raw materials from Tesla's Gigafactory valued at over $37 million dollars which occurred between January and June 2018. Mr. Hansen alleges that he was instructed not to report the thefts to outside law enforcement, that he was directed to cease his internal investigation into the issue, and that another Tesla employee who reported some of the thefts to law enforcement was fired by Tesla after being told that he was not a "Tesla team player;"

\* failed to disclose Tesla's unauthorized wiretapping and hacking of Tesla employee cell phones and computers,  including the hacking and wiretapping of its former employee  Martin Tripp (also represented by Meissner Associates).  According to Mr. Hansen, following Tripp's departure from Tesla, Tesla went so far as to install specialized router equipment within its Nevada Gigafactory designed to capture employee cell phone communications and/or retrieve employee cell phone data. The Meissner firm recently released police reports relating to this past June's GigaGate incident indicating that Tesla security personnel may have unlawfully accessed Mr. Tripp's cell phone long after he was fired by Tesla. [See Scan page 8 reference to "a little birdie"]. Mr. Hansen states that he was told these tactics were specifically authorized by CEO Elon

Hansen0000104

Musk and were implemented by members of Tesla's internal investigations/security/IT units. He further states that several such members of Tesla's security team were formerly employed by Uber Technologies Inc., ("Uber") referred to in the "Jacob's Letter" disclosed in the litigation entitled *Waymo LLC v. Uber Technologies, Inc., Docket No.: 3:17:cv-00939* in the Northern District of California. In that action, Uber is alleged to have utilized improper investigative techniques related to potential Uber competitors such as Google's (GOOG) driverless car spinoff Waymo LLC, and according to Mr. Hansen the security personnel accused of engaging in these tactics at Uber were hired by Tesla this year despite the revelation of a purported investigation by the U.S Attorney's Office in San Francisco this past December 2017 as to the actions related to the Uber security team.

*Failed to disclose a recent internal investigation by Tesla into a May 24th 2018 written notification it received from the U.S. Drug Enforcement Administration/Storey County Sheriff's Office Task Force ("DEA") alleging that several Tesla employees may be participants in a narcotics trafficking ring involving the sale of significant quantities of cocaine and possibly crystal methamphetamine at the Gigafactory on behalf of a Mexican drug cartel from Sonora Mexico. Hansen states that he internally reported to Tesla on June 12, 2018 that he had corroborated connections between certain Tesla employees at the time and various alleged members of the Mexican drug cartel identified in the DEA report as located in Mexico, that he urged Tesla to disclose his findings to law enforcement and to the DEA task force, but that Tesla refused to do so and instead advised him that Tesla would hire "outside vendors" to further investigate the issue. Mr. Hansen believes that Tesla never conducted any further investigation and that the corroborating information was never reported to law enforcement. Although Mr. Hansen reported his results to his three supervisors (two of whom were hired from Uber) including Uber hire Nick Gicinto (who is referred to in the "Jacobs Letter, " and is Tesla's new head of security who Hansen was told reported directly to CEO Musk on the drug cartel matter, the theft of raw materials matter, the computer hacking/wiretapping matter, and issues relating to Martin Tripp), to Mr. Hansen's knowledge, neither the investing public nor Tesla's Board of Directors were informed of the unusual manner in which Tesla handled this serious issue. Further, the Tesla employees who were the subject of the DEA trafficking tip were not terminated upon receipt of the DEA tip or anytime during the entire time that Mr. Hansen was employed by Tesla, to his knowledge.

Mr. Hansen was employed by Tesla until he was isolated, subjected to retaliation and terminated on July 16, 2018 after he raised the aforementioned issues and concerns to Tesla internally.

In filing the whistleblower submission, Mr. Meissner stated:

> *"Once again, very serious allegations are made by a credible source in this most recent SEC Whistleblower submission against a major public company and its CEO. I am hopeful the SEC and other government agencies will investigate these allegations and take swift appropriate action.*

Mr. Hansen, who is a retired Special Agent/Criminal Investigator, US Army Criminal Investigation Command, and former Sr. Investigator & Area Representative for Federal Maritime Commission's Southern California AOR, commented as follows:

> *"I am hopeful that the SEC and other authorities will investigate the unusual events that took place while I was employed by Tesla. I never expected that my employment with such a major public company would lead to uncovering such issues, and am disturbed by Tesla's highly unusual response to those like me who investigated them. I am also very disturbed by Tesla's failure to respect the privacy of its own employees. In my opinion, Tesla's actions have placed investors, the public, and Tesla employees at risk. I hope that shining a light on Tesla's practices will cause appropriate governmental action against the company and its management."*

Mr. Meissner is a former prosecutor and member of the New York Attorney General's office who [also assisted in the original drafting of the SEC's whistleblower rules](). He called the SEC's bounty program "*a critical shield by which individuals can be deputized in correcting bad corporate behavior. Shareholders and the investing public benefit through a program which rewards those who see something and say something, Mr. Hansen appears to fit the bill for those wanting to help the public and in this case both the investing public, and Tesla employees.*"

Note:  *New York based **Meissner Associates** is a nationally recognized whistleblower, securities, investment fraud and employment law firm representing SEC whistle-blowers, securities professionals as well as institutional and retail investors worldwide in recovering improper investment losses and protecting the employment rights of employees in the securities industry in FINRA arbitration and AAA Arbitration. Managing member Stuart Meissner is a former long-time Assistant District Attorney in Manhattan and Assistant New York State Attorney General in the Investor Protection and Financial Crimes Units. Mr. Meissner contributed to the crafting of the original SEC Whistleblower Rules and is cited by the agency for his contributions. For more, visit [www.secwhistleblowerAttorney.net](http://www.secwhistleblowerAttorney.net).*