**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| KARL HANSEN, | No. 23-15296 |
| *Plaintiff-Appellant*, | D.C. No. 3:19-cv-00413-LRH-CSD |
| v. | |
| ELON MUSK; TESLA MOTORS, INC.; U.S. SECURITIES ASSOCIATES, INC., | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted May 14, 2024
Pasadena, California

Filed December 10, 2024

Before:  Daniel P. Collins, Holly A. Thomas, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge H.A. Thomas;
Partial Concurrence and Partial Dissent by Judge Collins

# SUMMARY[*]

## Sarbanes-Oxley Act

The panel affirmed the district court's order dismissing a complaint alleging whistleblower retaliation claims.

Karl Hansen sued Tesla, Inc., its CEO, and U.S. Security Associates, alleging that they retaliated against him for reporting misconduct at Tesla. The district court ordered most of Hansen's claims to arbitration, except his claim under the Sarbanes-Oxley Act of 2002 (SOX). The district court confirmed the arbitration award disposing of the non-SOX claims, and granted defendants' motion to dismiss the entire suit—including the SOX claim—because the arbitrator's findings precluded Hansen from relitigating issues from arbitration that were also key to the SOX claim.

Affirming the district court's dismissal of the complaint, the panel held that, although an arbitrator's decision can never preclude a SOX claim, which is not subject to mandatory predispute arbitration agreements, a confirmed arbitral award can sometimes preclude relitigation of the issues underlying a SOX claim. In this case, relitigation of the dispositive issues underlying Hansen's SOX claim is precluded by the confirmed arbitral award that also conclusively resolves Hansen's other claims.

Judge Collins concurred in the judgment in part and dissented in part. Judge Collins concurred in the judgment to the extent that the majority affirmed the district court's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

rejection of all of Hansen's claims other than his SOX retaliation claim. Judge Collins dissented from the majority's decision affirming the district court's holding that the arbitral award collaterally estopped Hansen from litigating his SOX claim in the district court. He would reverse the dismissal of that claim and remand for further proceedings.

---

## COUNSEL

George W. Thomas (argued) and Robert L. Sirrianni, Jr., Brownstone PA, Winter Park, Florida, for Plaintiff-Appellant.

Robin E. Largent (argued) and Alex A. Smith, Martenson Hasbrouk & Simon LLP, Sacramento, California; Christopher F. Robertson (argued), Seyfarth Shaw LLP, Boston, Massachusetts; Dora V. Lane, Holland & Hart LLP, Reno, Nevada; Matthew T. Cecil, Holland & Hart LLP, Las Vegas, Nevada; for Defendants-Appellees.

**OPINION**

H.A. THOMAS, Circuit Judge:

The plain language of the Sarbanes-Oxley Act of 2002 (SOX) prevents SOX claims from being subject to mandatory predispute arbitration agreements. 18 U.S.C. § 1514A(e). This case raises the question whether a federal-court order confirming an arbitrator's decision can nevertheless have a preclusive effect in a SOX suit filed in federal court.

We hold that, although an arbitrator's decision can never preclude a SOX claim, a confirmed arbitral award can sometimes preclude relitigation of the issues underlying such a claim. And, in this case, we hold that relitigation of the dispositive issues underlying Karl Hansen's SOX claim is precluded by a confirmed arbitral award that also conclusively resolves Hansen's other claims. We therefore affirm the district court's order dismissing Hansen's complaint.

**I.**

**A.**

On July 19, 2019, Karl Hansen brought this lawsuit claiming that Tesla, Inc., Tesla's CEO Elon Musk, and U.S. Security Associates (USSA) (collectively, Defendants) retaliated against him for reporting misconduct at Tesla to Tesla's management and the Securities and Exchange Commission (SEC).**1** As alleged in Hansen's complaint, Hansen was hired as a protection associate by Tesla in March

---

1 Although Hansen's complaint also names Tesla Motors, Inc. as a defendant, he does not bring any claims against that entity.

2018, and in subsequent months was assigned to work as an investigations case specialist at Tesla's Nevada Gigafactory. While in those roles, Hansen investigated what he believed to be thefts at the Gigafactory costing Tesla tens of millions of dollars, as well as narcotics trafficking at the Gigafactory conducted in connection with Mexican drug cartels. Hansen also investigated contracts that he believed senior management at Tesla had improperly awarded. And he expressed concerns over the monitoring of employee communications by Tesla's Senior Manager of Global Security, including wiretapping and hacking. Hansen reported the findings of his investigations to Tesla's management. His reporting eventually reached Musk.

In June 2018, Tesla terminated Hansen's employment, citing internal restructuring. Hansen accepted an offer to work at USSA, with which Tesla contracted to provide security services. Hansen continued his investigations of alleged thefts and ties to criminal organizations at Tesla. He requested coordination with local, state, and federal law enforcement due to what he saw as the complexities of the case and informed his supervisors about a possible cover-up by senior management. On August 9, 2018, Hansen also filed an SEC report about Tesla's alleged misconduct.

On August 30, 2018, Musk saw Hansen stationed at an entrance to the Gigafactory and demanded that he be removed from his post. USSA subsequently told Hansen that his position at the Gigafactory had been eliminated and that he would be trained for a different position unrelated to Tesla. Hansen alleges that he was removed in retaliation for reporting misconduct at Tesla to his supervisors and the SEC.

**B.**

After Hansen filed his complaint, Defendants filed motions to compel arbitration of most claims on the ground that Hansen's employment agreement with USSA contained a provision mandating arbitration of disputes arising out of his assignment at Tesla. Defendants, however, did not move to compel arbitration of Hansen's SOX claim, which federal law states may not be subject to any "predispute arbitration agreement." 18 U.S.C. § 1514A(e)(2).

The district court granted the motions, ordering most of Hansen's claims to arbitration. *Hansen v. Musk*, No. 19-cv-00413, 2020 WL 4004800, at \*3–4 (D. Nev. July 25, 2020). The district court stayed proceedings with respect to Hansen's SOX claim, finding that it "ar[o]se from the same conduct" as his other claims. *Id.* at \*8.

**C.**

Before the arbitrator, Hansen brought multiple new claims, including claims for violations of the federal and Nevada Racketeer Influenced and Corrupt Organizations (RICO) Acts, and violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act's (Dodd-Frank) protections for whistleblowers. The arbitrator disposed of Hansen's RICO claims in two interim awards, holding that Hansen had failed to adequately allege either a pattern of racketeering activity or a cognizable injury. The arbitrator granted summary judgment to Defendants on Hansen's claim for breach of contract and one of his claims for tortious interference with his contractual relationship with USSA, finding that Hansen had no contractual right to continue working at the Gigafactory.

The arbitrator issued a final award on June 8, 2022, rejecting Hansen's remaining claim of tortious interference with contract and his claim of retaliation under Dodd-Frank. The arbitrator found the tortious interference claim failed because Hansen had no contractual right to be assigned to work at the Gigafactory. As to the Dodd-Frank claim, the arbitrator explained that Hansen had been transferred from Tesla to USSA because Tesla outsourced the work of all employees with Hansen's job position to USSA. And the arbitrator found that Hansen's position at the Gigafactory had not been terminated because of his complaint to the SEC, but rather because Hansen had emailed significant amounts of confidential information to third parties, and then attempted to cover his tracks by deleting the emails from his "sent" folder. The arbitrator also found that USSA could not have retaliated against Hansen for any protected activity because USSA had never been made aware of the activity that Hansen claimed was protected.

Explaining that, to be entitled to Dodd-Frank's whistleblower protections, Hansen must further prove that a reasonable person would have believed that the activities he reported violated securities laws, the arbitrator concluded that Hansen could not have reasonably held such a belief. The arbitrator explained that Hansen's complaints referenced only "[g]arden variety theft and drug violations[,] . . . matters governed by state and local law, not Dodd-Frank." The arbitrator noted that Hansen had not provided any argument to the contrary, and that Hansen had indeed testified that he was not even aware of what was reported to Tesla's shareholders or included in its financial statements.

**D.**

After the arbitrator's decision, Defendants filed a motion before the district court to lift the stay of proceedings, including the stay of the SOX claim, and to confirm the arbitration award. Hansen did not oppose the motion, which the district court granted on July 25, 2022. Defendants then filed motions to dismiss the entire suit, arguing that the arbitrator's findings precluded Hansen from relitigating the questions whether he engaged in protected activity, whether USSA knew about any protected activity, and whether USSA took adverse action against Hansen on the basis of protected activity—issues that were also key to Hansen's SOX claim.

The district court granted Defendants' motions and dismissed the case. The district court first cited our decision in *Clark v. Bear Sterns & Co.*, 966 F.2d 1318 (9th Cir. 1992), for the proposition that an arbitral award can have a preclusive effect on securities law claims, such as Hansen's SOX claim. The district court then held that Hansen could not relitigate whether he had engaged in protected activity in pursuing his SOX claim because the arbitrator had found that Hansen had not engaged in any protected activity at all, and Hansen had a full and fair opportunity to litigate that issue. The district court emphasized the arbitrator's finding that Hansen could not have reasonably believed the subject of his complaint was related to any violation of securities laws. And the district court noted that Hansen did not claim to blow the whistle regarding any other kind of fraud covered by SOX. The district court therefore dismissed Hansen's SOX claim with prejudice. This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. "We review dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo and may affirm on any ground supported by the record." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1014 (9th Cir. 2023). "We also review de novo whether issue preclusion is available," and if it is, we review for abuse of discretion "the district court's decision to apply the doctrine." *SEC v. Stein*, 906 F.3d 823, 828 (9th Cir. 2018).

## III.

### A.

In general, a "federal-court order confirming an arbitration award has 'the same force and effect' as a final judgment on the merits, 9 U.S.C. § 13, including the same preclusive effect."[2] *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019). Claims brought under SOX's anti-retaliation provision, however, may not be committed to arbitration by a "predispute arbitration agreement." 18 U.S.C. § 1514A(e). Hansen argues that giving preclusive effect to the arbitrator's decision as to the issues underlying his SOX claim would violate this statutory command, because doing so would mean that his SOX claim was effectively resolved in arbitration proceedings. We disagree.

---

[2] Because this case concerns the preclusive effect of an arbitral award confirmed by a federal court exercising federal question jurisdiction and because it concerns federal statutory claims, we apply federal law to determine the preclusive effect of the award. *See Hawkins v. Riley*, 984 F.2d 321, 324–25 (9th Cir. 1993).

**1.**

The Supreme Court has made clear that arbitration proceedings generally provide a suitable forum for the adjudication of federal claims. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265–72 (2009). But the Court has not always taken this view. In *McDonald v. City of West Branch*, the Supreme Court held that an unappealed arbitration award could not preclude a plaintiff from bringing a civil rights claim in federal court under 42 U.S.C. § 1983. 466 U.S. 284, 292 (1984). The Supreme Court explained in *McDonald* that in certain proceedings, "an arbitration proceeding cannot provide an adequate substitute for a judicial trial" because arbitrators may not always have the experience or authority to consider Section 1983 claims, plaintiffs may not be adequately represented during arbitration proceedings, and arbitral factfinding procedures may not be adequate to protect plaintiffs' federal rights. 466 U.S. at 290–92.

In *Dean Witter Reynolds, Inc. v. Byrd*, however, the Supreme Court took a step in another direction, suggesting that arbitration awards may sometimes be able to preclude federal claims, even when those claims could not themselves be resolved in arbitration. 470 U.S. 213, 222 (1985). Before *Byrd* was decided, some federal courts had held that arbitrable and nonarbitrable claims needed to be considered together in federal court, because otherwise the arbitration of the arbitrable claims might preclude the adjudication of the nonarbitrable claims. *Id.* at 222. The Supreme Court held in *Byrd*, however, that federal district courts could split such claims up, sending the arbitrable claims to arbitration and adjudicating the nonarbitrable claims themselves. *Id.* at 221–24. As to the possibility that doing so might have a preclusive effect on litigation concerning nonarbitrable claims, the Court, citing *McDonald* as an example, noted that

federal courts had tools to deal with this: namely, by determining what preclusive effect should be given to arbitration proceedings.[3] *Id.* at 223.

Following *Byrd*, federal courts of appeals held that arbitral awards could have a preclusive effect over nonarbitrable claims, but that this effect must be determined on a case-by-case basis. In *Greenblatt v. Drexel Burnham Lambert, Inc.*, for example, the Eleventh Circuit held that an arbitration award precluded the plaintiff from asserting certain predicate acts in a subsequent RICO claim. 763 F.2d 1352, 1359 (11th Cir. 1985). Noting that some courts had found RICO claims to be nonarbitrable, the Eleventh Circuit nevertheless held that the application of issue preclusion was appropriate in that case because the arbitration procedures employed "adequately protected the rights of the parties." *Id.* at 1361. Our court, in turn, cited *Greenblatt*'s reasoning with approval in *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097 (9th Cir. 1987). There, we held that a plaintiff could not relitigate securities claims in federal court that had already been resolved in arbitration.[4] *Id.* at 1099–1100. Then, in our 1992 decision in *Clark*, we held that "[a]n arbitration decision can have res judicata or collateral estoppel effect even if the underlying claim involves the federal securities

---

[3] *Byrd* nevertheless explicitly declined to decide whether such preclusion was permissible. *Id.* at 223.

[4] Before the Supreme Court's 1987 decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), we had held that Exchange Act claims could not be subject to arbitration. *Id.* at 225 n.1. In *C.D. Anderson & Co.*, we declined to reach whether *Shearson* had a retroactive effect because the parties had voluntarily submitted their case to arbitration and our holding was consistent with *Shearson*. 832 F.2d at 1099.

laws." 966 F.2d at 1321 (citing *C.D. Anderson & Co.*, 832 F.2d at 1100).

Although our decisions in *C.D. Anderson & Co.* and *Clark* indicate that nonarbitrable securities claims may be subject to preclusion from arbitral awards, those decisions did not directly address the question this case presents. In *C.D. Anderson & Co.*, we considered only whether an arbitral award resolving a claim could preclude litigation of the same claim in federal court. 832 F.2d at 1099–1100. And in *Clark*, we considered the preclusive effect of an arbitral award on a claim made nonarbitrable by contract. 966 F.2d at 1321 n.2. We therefore did not consider in those cases whether a confirmed arbitration award resolving an arbitrable claim could preclude a separate claim made nonarbitrable by statute.

**2.**

Hansen invokes the Supreme Court's decision in *Byrd* to argue that the arbitrator's resolution of his Dodd-Frank claim should not have any preclusive effect over his nonarbitrable SOX claim. Specifically, he references the Court's statement in that case that the preclusive effect of arbitration proceedings on nonarbitrable claims was "far from certain." *Byrd*, 470 U.S. at 222. But as the history recounted above makes clear, Hansen's reliance on that decision is misplaced. *Byrd* specifically left open the question whether arbitration proceedings could have a preclusive effect on nonarbitrable claims. *Id.* at 223. And, just as *Byrd* "foreshadowed" our conclusions in *C.D. Anderson & Co.* and *Clark*, so too did those decisions foreshadow the conclusion we reach today. *Clark*, 966 F.2d at 1321.

**3.**

It is true, as Hansen argues, that Congress has directed that SOX claims may not themselves be compelled to binding arbitration under a predispute agreement. 18 U.S.C. § 1514A(e)(2). But that declaration does not serve as a bar to the arbitrator's resolution of issues that may, as in this case, bear directly on the merits of a SOX claim. Nor does it prevent that resolution from having a preclusive effect.

The Supreme Court has "ma[d]e clear that issue preclusion is not limited to those situations in which the same issue is before two *courts*." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). Agencies, for example, may be unable to adjudicate certain federal claims or lack certain procedural protections—such as the right to a jury trial—guaranteed in federal court. *See id.* at 150 (considering an argument that granting preclusive effect to a federal agency decision could potentially violate the jury trial right). But the Supreme Court has nevertheless held as a matter of common law that an agency's resolution of issues properly before it can have a preclusive effect. *Id.*; *see also United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

Indeed, this holding has been applied to confer preclusive effect over state agency proceedings, even though the applicable statute requiring that federal courts give "full faith and credit" to state proceedings does not mention state agencies. 28 U.S.C. § 1738; *see also Jamgotchian v. Ferraro*, 93 F.4th 1150, 1154 (9th Cir. 2024) (explaining

that although 28 U.S.C. § 1738 "does not apply to state administrative agency decisions . . . the Supreme Court has held that, as a matter of federal common law, federal courts must sometimes accord preclusive effect to state agency decisions" (citation omitted)). We thus explained in *Guild Wineries & Distilleries v. Whitehall Co.*, that the decisions of state agencies may have a preclusive effect "so long as the state proceeding satisfies the requirements of fairness outlined" by the Supreme Court.[5] 853 F.2d 755, 758 (9th Cir. 1988) (citing *Utah Constr.*, 384 U.S. at 422).

Here, by contrast, we need not rely on the common law. The Federal Arbitration Act contains an express statutory command that a federal-court judgment confirming an arbitrator's decision be given "'the same force and effect'" as any other judgment from a federal court, "including the same preclusive effect." *NTCH-WA, Inc.*, 921 F.3d at 1180 (quoting 9 U.S.C. § 13). And although 18 U.S.C. § 1514A(e) states that SOX claims may not themselves be subject to predispute arbitration agreements, nothing in the statute clearly limits the issue-preclusive force of a confirmed arbitral award's resolution of issues within the arbitrator's jurisdiction. *Cf. Howard v. City of Coos Bay*, 871 F.3d 1032, 1040–44 (9th Cir. 2017) (finding that, even though a prior judgment could not have addressed the plaintiff's present claim, issue preclusion applied because it "bars 'successive

---

[5] Strengthening the analogy between arbitral and administrative proceedings, we also apply the *Utah Construction* factors to determine "whether an arbitration was sufficiently adjudicatory in nature" to have a preclusive effect in a federal court case. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1178 (9th Cir. 2002) (relying on California Supreme Court precedent that applied the *Utah Construction* factors). Here, however, no party has argued that the arbitration proceedings were insufficiently adjudicatory under *Utah Construction*.

litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim" (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008))).

Absent a "clear and manifest" expression of congressional intent, we will not presume that another statute has displaced the Federal Arbitration Act's requirements. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). We therefore see no reason to exempt SOX claims from the preclusive effect afforded to confirmed arbitral awards.[6]

**4.**

Contrary to Hansen's argument, our holding does not circumvent the statutory restriction on the arbitration of SOX claims. 18 U.S.C. § 1514A(e)(2). That restriction still has force. First, because "the plaintiff is 'the master of the

---

[6] The dissent would hold that *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), and its progeny compel us to read such a limitation into SOX. That line of cases held that arbitration awards can have no preclusive effect in subsequent statutory actions if the "arbitrators were not authorized to resolve such claims." *Pyett*, 556 U.S. at 264. But those cases concerned only unconfirmed arbitration awards. *See Gardner-Denver*, 415 U.S. at 42–43; *Barrentine v. Arkansas-Best Freight Sys., Inc.* 450 U.S. 728, 730–731 (1981); *McDonald*, 466 U.S. at 286. "[T]he considerations that motivated the Supreme Court to deny preclusive effect to unreviewed arbitration decisions are not present in a case like the one before us, which involves a reviewed arbitration decision." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989). And treating confirmed and unconfirmed arbitral awards equally would ignore the FAA's command that confirmed awards "shall have the same force and effect" as a judgment. 9 U.S.C. § 13.

complaint,'" she may always avoid a preclusive arbitral award by declining to plead arbitrable claims along with a SOX claim, where the arbitration might resolve issues necessary for a SOX claim's success. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). Indeed, Hansen himself initially took this route. His complaint before the federal district court did not allege a Dodd-Frank claim, which Hansen raised for the first time before the arbitrator.

Second, as the Supreme Court explained in *Byrd*, courts can continue to apply conventional "preclusion doctrine" to "directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding." 470 U.S. at 223. For example, courts must insist that arbitration proceedings provide a "full and fair opportunity to litigate" the preclusive issue, and that "the issue was actually litigated and decided" in the arbitration proceedings. *Howard*, 871 F.3d at 1041 (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012)); *Clark*, 966 F.2d at 1322–23 (declining to confer preclusive effect on an arbitral award because the record was insufficient "to pinpoint the exact issues previously determined"). Both plaintiffs and courts therefore retain tools to protect the statutory right to federal adjudication of SOX claims.

**B.**

Traditional preclusion doctrine holds that an issue resolved by a prior proceeding is precluded from relitigation if "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide

the merits." *Howard*, 871 F.3d at 1041 (quoting *Oyeniran*, 672 F.3d at 806). The Supreme Court's decision in *McDonald*, 466 U.S. at 290–91, and the Eleventh Circuit's decision in *Greenblatt*, 763 F.2d at 1361, however, suggest that "at least with respect to an important, nonarbitrable federal claim," courts should be "hesitant to preclude the litigation of [a] federal claim based on the [issue preclusive] effects of a prior arbitration award." *Greenblatt*, 763 F.2d at 1361. These decisions instead indicate that courts should consider additional factors beyond those contemplated by conventional preclusion doctrine, including "the federal interests in insuring a federal court determination of the federal claim," the "expertise of the arbitrator," and "the procedural adequacy of the arbitration proceeding." *Id.*; *McDonald*, 466 U.S. at 290–91. Based on these decisions, Hansen urges us to take a "case-by-case approach to determining the [issue preclusive] effects of arbitration." *Greenblatt*, 763 F.2d at 1361. But we need not decide whether to do so here. Regardless of whether there are ever circumstances—beyond those contemplated by conventional preclusion doctrine—under which courts may decline to confer a preclusive effect on an arbitral award, such circumstances are not present in this case.

Unlike the factors the Court found controlling in *McDonald*, for example, Hansen points to no deficiency in the arbitrator's experience or expertise in adjudicating federal statutory claims. *Cf. McDonald*, 466 U.S. at 290–91. Nor can he, given the Supreme Court's holding in *Shearson*, 482 U.S. at 227–39, point to a general rule limiting the arbitrator's ability to consider federal securities law claims. Quite to the contrary, the arbitrator considered and resolved Hansen's Dodd-Frank claim—a securities law claim which,

as we will further explain, has similar elements to Hansen's SOX claim.

Hansen also does not identify any deficiencies in the arbitration procedures themselves. Hansen and Defendants were represented by counsel and able to present relevant evidence. *Cf. Greenblatt*, 763 F.2d at 1361. Hansen therefore provides no legal or prudential reason to deny preclusive effect to the arbitrator's decision.

## IV.

Hansen argues that even if a confirmed arbitral decision can preclude relitigating issues in the litigation of a subsequent, nonarbitrable claim, the arbitrator's findings in this case do not have issue preclusive effect on his present claim under SOX. We again disagree.

"Issue preclusion, or collateral estoppel, 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Howard*, 871 F.3d at 1040–41 (quoting *Taylor*, 533 U.S. at 892). For issue preclusion to apply, the party seeking preclusion must show "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Id.* at 1041 (quoting *Oyeniran*, 672 F.3d at 806).

The district court correctly held that key aspects of Hansen's SOX claim were precluded by the arbitrator's findings resolving his Dodd-Frank claim. Dodd-Frank prohibits an employer from taking an adverse employment action or discriminating against a "whistleblower" because

of "any lawful act" the whistleblower performs "(i) in providing information to the [SEC] . . . ; (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the [SEC] based upon or related to such information; or (iii) in making disclosures that are required or protected under" SOX or other securities laws. 15 U.S.C. § 78u-6(h)(1)(A). The law defines a "whistleblower" as a person or group who "provides . . . information relating to a violation of the securities laws to the [SEC], in a manner established, by rule or regulation, by the [SEC]." *Id.* § 78u-6(a)(6). To receive protection from retaliation, under the regulation in effect at the time Hansen contacted the SEC, the whistleblower must "possess a reasonable belief that the information . . . provid[ed] relates to a possible securities law violation." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 158 (2018) (quoting 17 C.F.R. § 240.21F-2(b)(1)(i) (2011)).[7]

SOX provides different, although related, protections. It protects employees of public companies from retaliation for providing information to a supervisor, federal agency, or Congress. 18 U.S.C. § 1514A(a). To obtain the statute's anti-retaliation protections, the employee must "report what they reasonably believe to be instances of criminal fraud or securities law violations." *Murray v. UBS Sec., LLC*, 601 U.S. 23, 27 (2024). But while "Dodd-Frank's whistleblower provision . . . focuses primarily on reporting to federal authorities," SOX's "protections include employees who provide information to any 'person with supervisory

---

[7] The current version of the regulation contains a similar requirement that a whistleblower "must reasonably believe that the information . . . provide[d] . . . relates to a possible violation of the federal securities laws." 17 C.F.R. § 240.21F-2(d)(1)(ii) (2020).

authority over the employee.'" *Lawson v. FMR LLC*, 571 U.S. 429, 456 (2014) (quoting 18 U.S.C. § 1514A(a)(1)(C)).

In this case, the arbitrator found that Hansen could not have reasonably believed that the subject of his complaint to the SEC related to any violation of securities laws. This element is common to both Dodd-Frank and SOX claims, and Hansen points to no difference in the merits of what an arbitrator or court must find to resolve that element.

Hansen does not point to any other difference that would militate against issue preclusion. Hansen does not argue, for example, that the issue was not "actually litigated and decided" or that it was not "necessary to decide the merits" of his Dodd-Frank claim. *Howard*, 871 F.3d at 1041 (quoting *Oyeniran*, 672 F.3d at 806). Nor could he. First, the arbitrator agreed with Tesla that Hansen had no reasonable belief that the conduct he investigated related to a violation of the securities laws. This is sufficient to satisfy the "actually litigated" requirement, which requires only that the issue be "raised, contested, . . . submitted for determination[,] and . . . determined." *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019) (quoting Restatement (Second) of Judgments § 27, cmt. (d) (1982)). And this finding was "necessary" to the arbitrator's resolution of Hansen's Dodd-Frank claim on the merits, as it disposed of a key element of that claim. *See id.* (explaining that even implicitly resolved issues satisfy this factor if "necessary to the ultimate determination").

Although Hansen argues that he did not have a full and fair opportunity to specifically litigate his SOX claim before the arbitrator, he mistakes the nature of issue preclusion. The point of the doctrine is to bar the relitigation of an issue already litigated and resolved "even if the issue recurs in the

context of a different claim." *See Howard*, 871 F.3d at 1041
(quoting *Taylor*, 553 U.S. at 892). And Hansen, as just
discussed, did litigate the issue. Nor can Hansen show that
he lacked a full or fair opportunity to do so, because he
identifies no deficiencies in the procedures employed during
the arbitration or in the parties' incentives to fully air the
issue out. *See Maciel v. Comm'r*, 489 F.3d 1018, 1023 (9th
Cir. 2007) (explaining the factors used to determine whether
a party had a full and fair opportunity to litigate an issue). It
was thus appropriate for the district court to apply issue
preclusion principles in dismissing this case.[8]

Hansen nevertheless argues that the arbitrator's rejection
of his Dodd-Frank claim cannot preclude his SOX claim
because SOX claims rely on a burden-shifting framework to
assess the employer's retaliatory intent. Under this
framework, the plaintiff must first make out a prima facie
case of retaliation before the burden shifts to the defendant
to show "'by clear and convincing evidence' that it 'would
have taken the same unfavorable personnel action in the
absence of' the protected activity." *Murray*, 601 U.S. at 27–
28 (quoting 49 U.S.C. § 42121(b)(2)(B)(ii)).

---

[8] Of course, SOX also prohibits retaliation against employees who report
other forms of federal criminal fraud (including bank fraud, wire fraud,
mail fraud, commodities fraud, and "fraud against shareholders"). 18
U.S.C. § 1514A(a)(1). But Hansen makes no specific argument that he
reported any such fraud, and his complaint contains only a conclusory
allegation that Defendants committed non-securities fraud. These
allegations are not enough to sustain his claim. *See Van Asdale v. Int'l
Game Tech.*, 577 F.3d 989, 1001 (9th Cir. 2009) (explaining that, to
demonstrate an objectively reasonable belief of shareholder fraud, "the
complaining employee's theory of such fraud must at least approximate
the basic elements of a claim of securities fraud" (quoting *Day v. Staples,
Inc.*, 555 F.3d 42, 55 (1st Cir. 2009))).

We need not elaborate on how (or even if) the burden-shifting framework for determining a defendant's retaliatory intent under SOX differs from the framework for determining a defendant's intent under Dodd-Frank. Hansen's claim fails regardless of Defendants' intent. To make out a prima facie claim under SOX, Hansen must allege an "objectively reasonable" belief that his complaint to the SEC reported a violation of federal securities or fraud law. *Van Asdale*, 577 F.3d at 1000. But the arbitrator found that Hansen did not have this objectively reasonable belief. Even if a burden-shifting framework applies only to SOX claims, the burden therefore would not shift.

## V.

Finally, Hansen argues that the arbitrator's decision should not have prevented him from raising his state law claims in federal court, because the arbitrator's dismissal of those claims merely precluded him from raising them again in the same forum.[9] Hansen suggests that it is an issue of first impression "whether dismissal of claims by an arbitrator constitutes a determination on the merits" with a preclusive effect. But on the contrary, and as we have already discussed, it is well established that a "federal-court order confirming an arbitration award has 'the same force and effect' as a final judgment on the merits, 9 U.S.C. § 13, including the same preclusive effect." *NTCH-WA, Inc.*, 921 F.3d at 1180.

---

[9] As we held in *NTCH-WA, Inc.*, state preclusion law determines the preclusive effect of federal-court orders confirming arbitration awards when the federal court is sitting in diversity. 921 F.3d at 1180-81. Hansen, however, raises no argument under Nevada law nor does he argue that it differs from federal law on this issue.

The case law that Hansen cites in support of his argument is inapposite. In each of these cases, the court found only that dismissal of a claim on purely procedural grounds did not prevent the plaintiff from reasserting the claim in another forum. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 499, 509 (2001) (holding that a failure to comply with California's statute of limitations did not bar the claim from being raised again in Maryland court under Maryland law, which had a longer statute of limitations); *Post, LLC v. Berkshire Hathaway Specialty Ins. Co.*, No. 20-cv-2972, 2022 WL 3139022, at *1 (D.D.C. Aug. 5, 2022) (holding that an arbitrator's dismissal for "nonpayment of fees" did not give rise to a "claim-preclusive effect in related litigation").

A decision that "passes directly on the substance of a particular claim," however, may preclude subsequent litigation. *Semtek Int'l Inc.*, 531 U.S. at 501–02 (cleaned up). Here, the arbitrator addressed the substance of Hansen's state law claims by finding that Hansen had failed to establish necessary elements of those claims. Those decisions were subsequently confirmed by the district court without opposition and are entitled to preclusive effect.

## VI.

The arbitrator's decision precluded each of the claims that Hansen raised before the district court. We therefore **AFFIRM** the judgment of the district court dismissing those claims.

COLLINS, Circuit Judge, concurring in the judgment in part and dissenting in part:

In the proceedings below, Plaintiff Karl Hansen asserted a variety of claims against Defendants Elon Musk; Tesla Motors, Inc.; and U.S. Security Associates, Inc. The district court compelled arbitration of all of the claims except for Hansen's claim against Defendants under the whistleblower retaliation provision of the Sarbanes-Oxley Act. *See* 18 U.S.C. § 1514A. The latter claim was not submitted to arbitration because § 1514A(e) expressly states that the "rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement," and that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." *Id*. § 1514A(e). After the arbitration was concluded, Defendants sought confirmation of the arbitral award, which had rejected all of the claims submitted to the arbitrator (which included some additional claims that were asserted by Hansen in the arbitration and had not been raised in Hansen's original complaint). Hansen did not oppose confirmation, and the district court confirmed the award and adopted it as a "final, enforceable judgment." Defendants subsequently moved to dismiss the remaining Sarbanes-Oxley claim as barred by the issue-preclusive effect of the arbitral award, and the district court granted that motion. Hansen has appealed the resulting dismissal of his claims, and I would affirm in part, reverse in part, and remand.

# I

For the first time on appeal, Hansen argues that the district court committed plain error in rejecting, based on the

adverse arbitral award, several of the claims he asserted
before the arbitrator. Hansen's arguments on this score are
frivolous. Hansen asserts that the arbitrator's pre-hearing
dismissal of several state-law claims was not "on the merits,"
but that contention is flatly belied by the arbitrator's
decisions. The arbitrator expressly dismissed these claims,
in advance of the arbitral evidentiary hearing, because it was
apparent either at the pleading stage or at summary judgment
that Hansen could not satisfy one or more essential elements
of these claims. The resulting judgment confirming the
award was therefore an adverse final judgment on the merits
of those claims, and Hansen is fully bound by that judgment.
I therefore concur in the judgment to the extent that the
majority affirms the district court's rejection of all of
Hansen's claims *other* than his Sarbanes-Oxley retaliation
claim.

## II

In my view, however, the district court erred in holding
that, despite the statutory prohibition on arbitration of
Sarbanes-Oxley whistleblower retaliation claims, *see* 18
U.S.C. § 1514A(e), the arbitral award collaterally estopped
Hansen from litigating his Sarbanes-Oxley retaliation claim
in the district court. I therefore dissent from the majority's
decision affirming the district court on this point.

## A

In concluding that the arbitration award against Hansen
may be given preclusive effect vis-à-vis his Sarbanes-Oxley
retaliation claim, the majority places dispositive reliance on
§ 13 of the Federal Arbitration Act ("FAA"), which states in
relevant part that a judgment confirming an arbitration award
"shall have the same force and effect, in all respects, as, and
be subject to all the provisions of law relating to, a judgment

in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. According to the majority, invoking § 1514A(e) to decline giving preclusive effect to the confirmed arbitration award here would improperly "displace[]" FAA § 13's requirements without the "'clear and manifest' expression of congressional intent" necessary to support such an asserted repeal by implication. *See* Opin. at 15 (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)). But the canon invoked in *Epic Systems* rests on the premise that the "two statutes" in question "*cannot be harmonized*." 584 U.S. at 510 (emphasis added). Here, the conflict posited by the majority between the statutes is illusory, because the majority's reliance on § 13 is ultimately question begging. We have said that federal common law governs the preclusive effect, under FAA § 13, of a federal court judgment confirming an arbitration award, *see NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019), and the question presented here is whether, *as a matter of federal common law*, preclusive effect should be denied in this specific context in light of the general nonarbitrability of Sarbanes-Oxley retaliation claims.[1]   Whichever way that

---

[1] The majority suggests that, because federal common law would incorporate state common law in cases in which the district court is exercising diversity jurisdiction, *see NTCH-WA*, 921 F.3d at 1180, Nevada preclusion law would presumably apply here. *See* Opin. at 22 n.9. But the district court was not exercising diversity jurisdiction when it confirmed the arbitral award. Rather, the district court had federal-question jurisdiction over Hansen's still-pending Sarbanes-Oxley claim, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over any related non-federal claims, *id*. § 1367(a). Accordingly, the preclusive effect of the federal judgment confirming the arbitral award here is governed by

federal common law issue under § 13 is properly resolved, there will be no resulting conflict between the two statutes.

**B**

I turn, then, to whether, under the applicable federal common law preclusion principles, preclusive effect should not be given to the confirmed arbitral award in light of § 1514A(e).   In applying the federal common law of preclusion, the federal courts have generally followed the principles set forth in the Restatement of Judgments.  *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015).  Under § 84 of the Restatement, issue preclusion will not be afforded to a "determination of an issue in arbitration" if, *inter alia*, doing so "would be incompatible with *a legal policy* . . . that the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question."  RESTATEMENT (SECOND) OF JUDGMENTS § 84(3)(a) (emphasis added). According to comment (g) to § 84, this exception recognizes that the "conclusive effect of an arbitration award is subordinate" to any "statutory provisions for alternative or supplementary procedures" governing a dispute.  *Id*. § 84 cmt. g.   The Reporter's Note to § 84 further states that comment (g) is based on *Alexander v. Gardner-Denver Co.*,

---

federal common law.  *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001); *see also* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4472, at p.358 (3d ed. 2019).  And even if state law were borrowed as the rule of decision, that borrowing would be limited by the principle that any "federal reference to state law will not obtain, of course, in situations in which the state law is incompatible with federal interests."  *Semtek*, 531 U.S. at 509.  For the reasons I will explain, here there is a "federal interest[]" that is incompatible with the application of issue preclusion.

415 U.S. 36 (1974), which held that, under the circumstances of that case, an arbitral decision against an employee challenging his termination under a collective bargaining agreement could not be given preclusive effect so as to bar a subsequent racial discrimination suit under Title VII of the Civil Rights Act of 1964. *Id*. at 47–54.

In a line of subsequent cases, the Supreme Court has explored the contours of the exception to arbitral preclusion recognized in *Gardner-Denver*. In *McDonald v. City of West Branch*, 466 U.S. 284 (1984), the Supreme Court noted that, similar to *Gardner-Denver*, the Court in *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981), had held that an adverse arbitration decision concerning employees' wage claims did not "preclude[] a subsequent suit based on the same underlying facts alleging a violation of the minimum wage provisions of the Fair Labor Standards Act." *McDonald*, 466 U.S. at 289. *McDonald* construed *Barrentine* and *Gardner-Denver* as being "based in large part on [the Court's] conclusion that Congress intended the statutes at issue in those cases to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." *Id*. Applying that principle, the Court in *McDonald* reached the same conclusion with respect to an action under 42 U.S.C. § 1983, holding that arbitration "cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *Id*. at 290.

More recently, the Court has underscored "the narrow scope of the legal rule arising from th[e] trilogy of decisions" in *Gardner-Denver*, *Barrentine*, and *McDonald*. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263 (2009). As the Court

explained, those decisions "did not involve the issue of the enforceability of an agreement to arbitrate statutory claims," because the employees in those cases "had not agreed to arbitrate their statutory claims." *Id*. at 264 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)). The three cases therefore addressed only whether, when the "arbitrators were not authorized to resolve such [statutory] claims," the arbitral award resulting from the overlapping "contract-based claims precluded subsequent judicial resolution of statutory claims." *Id*. (citation omitted). The *Pyett* Court stated that, given the arbitrators' lack of authority to resolve the statutory claims in that trilogy of cases, "the arbitration in those cases *understandably* was held not to preclude subsequent statutory actions." *Id*. (emphasis added). *Pyett* held that "*Gardner-Denver* and its progeny thus do not control the outcome where, as is the case here [in *Pyett*], the collective-bargaining agreement's arbitration provision expressly covers both statutory and contractual discrimination claims." *Id*. Because the parties had agreed to submit the statutory claims to arbitration, and no congressional policy overrode that choice, *Pyett* held that the lower courts had erred in refusing to compel arbitration of the statutory claims. *See id*. at 257–58; *see also Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (stating that the FAA generally "mandates enforcement of agreements to arbitrate statutory claims," subject to that mandate being "overridden by a contrary congressional command").

This case plainly falls within the *Gardner-Denver* line of cases, even as narrowly construed in *Pyett*. The Court in *Pyett* stated that, under the *Gardner-Denver* line of cases, preclusion "understandably" would not be afforded to an arbitral award so as to bar litigation of a statutory claim when

the "arbitrators were not authorized to resolve such claims."
556 U.S. at 264.   That narrow principle squarely applies
here, because, in light of § 1514A(e), the arbitrator in this
case was explicitly *not* authorized to decide the Sarbanes-
Oxley retaliation claim.   The predicate for application of the
*Gardner-Denver* rule is therefore present here, and under
that rule preclusive effect may not be given, vis-à-vis the
Sarbanes-Oxley retaliation claim, to the arbitrator's
decision.

Indeed, the result here is arguably on more solid footing
than even the *Gardner-Denver* trilogy of cases themselves,
because none of those cases involved a statute with a
comparably explicit prohibition on waiving judicial
remedies and opting for arbitration.   Moreover, in *Pyett*, the
Court sharply criticized the "broad dicta" in "the *Gardner-
Denver* line of cases" that "were highly critical of the use of
arbitration for the vindication of statutory antidiscrimination
rights," 556 U.S. at 265, and we have construed the Court's
post-*Gardner-Denver* case authority as "reject[ing] a
reading of [*Gardner-Denver*] as *prohibiting* the arbitration
of employment discrimination claims."   *EEOC v. Luce,
Forward, Hamilton & Scripps*, 345 F.3d 742, 748 (9th Cir.
2003) (en banc) (emphasis added) (citations and internal
quotation marks omitted).   Thus, given that Title VII claims
*can* be submitted to arbitrators, there will presumably be few
cases calling for the application of the actual holding of
*Gardner-Denver*—*viz*., that an arbitral award rendered by
arbitrators who *lacked* authority to decide a Title VII claim
will not be given preclusive effect against such a claim.   But
nothing in subsequent Supreme Court caselaw has abrogated
the narrow non-preclusion rule reaffirmed in *Pyett*, *see
Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199,

1204–08 (10th Cir. 2011), and in light of § 1514A(e), this case falls within that rule.

## C

In reaching a contrary conclusion, the majority first suggests that the *Gardner-Denver* line of cases is strictly limited to "unconfirmed arbitration awards" and therefore cannot apply to the confirmed arbitration award at issue in this case. *See* Opin. at 15 n.6. That argument misses the mark. *McDonald* emphasized the lack of judicial confirmation in explaining why the "Federal Full Faith and Credit Statute, 28 U.S.C. § 1738," did not require the Court to adhere to *state-law* preclusion principles in considering the effect of the unreviewed arbitral award in that case. *McDonald*, 466 U.S. at 287. As the Court explained, the relevant language of § 1738 extends full faith and credit only to "judicial proceedings," and because an "unappealed arbitral award" does not involve a judicial judgment, § 1738 is inapplicable in the context of such awards. *Id*. at 287–88. As a result, the *McDonald* Court held that it was not required by § 1738 "to give the same preclusive effect to a state-court judgment *as would the courts of the State rendering the judgment*." *Id*. at 287 (emphasis added). Instead, the Court was free to "judicially fashion[]" a *federal* "rule of preclusion" as a matter of federal common law, and it fashioned the rule that I have described above. *Id*. at 288. By contrast, we have held that, under "the plain language of section 1738," *state-law* preclusion principles will control when a state court renders a judgment confirming an arbitral award. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989); *see also id*. at 1178 n.2 (noting that, by contrast, "[t]he federal courts have frequently fashioned federal common law rules of preclusion where § 1738 does not apply"). Here, as I have already explained, federal

common law governs the preclusive effect of the federal district court's confirmation of the arbitral award rejecting Hansen's federal and state claims. *See supra* note 1. And given that the *Gardner-Denver* rule is part of the relevant federal common law preclusion principles that govern here, it applies in this case.

The majority also claims that, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), the Supreme Court undermined the *Gardner-Denver* non-preclusion rule by "suggesting that arbitration awards may sometimes be able to preclude federal claims, even when those claims could not themselves be resolved in arbitration." *See* Opin. at 10. *Byrd* said nothing of the sort. *Byrd* merely held that, when confronted with both arbitrable and arguably non-arbitrable claims, a court should not decline to compel arbitration of the arbitrable claims based on a concern that "the findings in the arbitration proceeding might have collateral-estoppel effect in a subsequent federal proceeding." 470 U.S. at 221. Neither a stay of arbitration nor a federal court adjudication of the arbitrable claims was warranted on such grounds, the Court explained, because any such preclusion-based concern can be addressed by "the formulation of collateral-estoppel rules" that will "afford[] adequate protection to that interest." *Id*. at 222. Far from being a rejection of the *Gardner-Denver* cases' limits on preclusion, *Byrd* held that arbitration could go forward in such mixed cases precisely because preclusive effect could later be *denied* to the arbitration award if warranted. *Id*. In fact, *Byrd* specifically relied on *McDonald* in concluding that, after the arbitration was completed, the "courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding." *Id*. at 223 (citing *McDonald*, 466 U.S. at 287–88).

The majority also asserts that this court's caselaw has retreated from the narrowed *Gardner-Denver* rule, but that too is wrong. The majority notes that we afforded preclusive effect to an arbitration award in *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097 (9th Cir. 1987). But the predicate for application of the *Gardner-Denver* rule was not present in *C.D. Anderson*, and it is therefore not surprising that we did not apply it. As we noted in *C.D. Anderson*, the plaintiff had affirmatively *agreed* to submit its "securities law and RICO claims" to arbitration, despite contending that those claims were non-arbitrable and that it "could not waive its right to litigate the claims in federal court." *Id*. at 1099. We rejected the plaintiff's non-waivability argument and held that it *had* "waived any right it had to litigate those claims in federal court." *Id*.; *see also id*. (holding that, in light of this valid waiver, we assertedly did not need to decide whether we could apply retroactively the Supreme Court's holding in *Shearson/American Express*, 482 U.S. at 238–42, that Rule 10b-5 and RICO claims were arbitrable). Because the arbitrator in *C.D. Anderson* thus *did* have authority to decide those claims, the predicate for application of the *Gardner-Denver* rule—*viz*., that the "arbitrators were not authorized to resolve such claims," *Pyett*, 556 U.S. at 264—was absent in *C.D. Anderson*.

Our decision in *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318 (9th Cir. 1992), is also inapposite. Because the parties' agreement there did *not* allow arbitration of the plaintiff's "federal securities claims," the district court compelled arbitration of the remaining claims and stayed the securities claims pending the outcome of the arbitration. *Id*. at 1320–21. The fact that the parties' agreement denied the arbitrator the authority to decide the securities claims arguably did provide a predicate for applying the *Gardner-*

*Denver* rule against giving issue-preclusive effect to the arbitration, but we said nothing about any such rule (perhaps because it was not raised by the parties).[2]  Instead, we noted that, under *C.D. Anderson*, there is no categorical prohibition on giving preclusive effect to an arbitration award "even if the underlying claim" to be precluded "involves the federal securities laws." *Id*. at 1321.  We nonetheless ultimately denied preclusive effect to the arbitral decision on other grounds, holding that the defendants had failed to carry their burden to establish "the exact issues previously determined" in the arbitration and that, as a result, collateral estoppel could not be applied. *Id*. at 1322–23.  Because *Clark* denied issue-preclusive effect on other grounds and never squarely addressed whether the *Gardner-Denver* rule should have yielded the same result, our decision in that case cannot be understood as somehow recognizing an abrogation of that rule (which, of course, we would have no authority to do in any event).

In short, neither *Clark* nor *C.D. Anderson* considered, much less rejected, the still-binding, narrow *Gardner-Denver* rule that the majority wrongly fails to apply in this case.

*   *   *

For the foregoing reasons, I would reverse the district court's dismissal of Hansen's Sarbanes-Oxley whistleblower retaliation claim on preclusion grounds and remand for further proceedings concerning that claim. I would otherwise affirm the district court's judgment. I

---

[2] We did recognize, however, that the arbitrator's lack of jurisdiction over the securities claims did mean that res judicata—*i.e.*, *claim* preclusion—could not apply. *Clark*, 966 F.2d at 1321.

therefore respectfully dissent in part and concur in the judgment in part.